IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| RONALD O. LATRAY,<br><br>        Petitioner,<br><br>  vs.<br><br>WARDEN PETE BLUDWORTH;<br>ATTORNEY GENERAL OF THE<br>STATE OF MONTANA,<br><br>        Respondents. | Cause No. CV 21-67-BLG-KLD<br><br><br><br>ORDER |

On June 10, 2021, pro se petitioner Ronald O. LaTray filed a petition

seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and brief in support.

(Docs. 1 & 2.)  LaTray generally claims: (1) the state courts failed to fully and

fairly litigate his asserted Fourth Amendment violation; (2) the state courts

unreasonably determined the facts in light of the evidence, relative to his *ex post*

*facto* claim, in violation of 28 U.S.C. § 2254(d); and, (3) the state courts

unreasonably applied federal law to his sentencing-related claim, in violation of 28

U.S.C. § 2254(d).  *See*, (Doc. 2 at 6-16.)

Respondents filed an Answer to LaTray's petition, accompanied by various

exhibits.  *See*, (Doc. 14); *see also*, (Docs. 14-1 through 14-19.)  Respondents generally argue (1) LaTray's Fourth Amendment claim is precluded by the doctrine of *Stone v. Powell*; (2) LaTray's *ex post facto* claim is procedurally defaulted without excuse, the claim was not fairly presented to the Montana Supreme Court and is unexhausted, and the claim lacks merit; and, (3) his sentencing claim is procedurally defaulted and lacks merit.  *See generally*, (Doc. 14 at 32-66.)

Both parties have consented to proceed before the undersigned for all purposes.  *See*, 28 U.S.C. § 636(c); *see also*, (Doc. 18.)  As explained herein, Mr. LaTray's petition will be denied and dismissed.

## I.    Procedural History

Although the background of LaTray's state proceedings has been previously summarized at length by the parties, the relevant portions will be discussed below.

### i.    District Court Proceedings

On March 24, 2015, LaTray was arrested and charged with felony Driving Under the Influence (DUI) and Operating a Motor Vehicle without Liability Protection.[1]  On April 30, 2015, the State filed a Notice of Intent to have LaTray designated as a Persistent Felony Offender ("PFO"), pursuant to Mont. Code Ann.

---

[1] *See*, Information (Doc. 14-2.)

46-13-108.[2]  The State provided subsequent notice of the PFO designation in the

omnibus memorandum.  (Doc. 14-3 at 5-6.)

LaTray filed a motion to suppress and dismiss based upon a lack of

particularized suspicion and the state troopers' violation of the speed limit.  *See*,

*State v. LaTray*, 2018 MT 305N ¶ 4, 394 Mont. 390, 432 P. 3d 707 (Table).[3]  The

district court held an evidentiary hearing during which the court reviewed the

dashboard camera from the patrol vehicle and heard testimony from both troopers

involved in the stop and seizure of LaTray.  *Id*.[4]  The court ultimately denied

LaTray's motion, finding that there was particularized suspicion to effectuate the

stop based on his unsafe lane change, regardless of whether or not the troopers had

violated the speed limit.  *Id*.[5]

LaTray entered a nolo contendere plea, reserving his right to appeal the

denial of his motion to suppress.  *Id*. at ¶ 2.  LaTray was designated as a PFO under

state law.  *See*, Judg. (Doc. 14-11 at 2, 5.)     On April 13, 2017, LaTray was

sentenced for the felony DUI to 20 years at the Montana State Prison, with 10 of

the years suspended.  *Id*. at 1.  There was discussion during the sentencing hearing

that while the DUI was LaTray's third felony DUI, it was either his fourteenth or

---

[2] *See*, Case Register Rpt, Filing No. 10 (Doc. 14-1 at 1.)
[3] A copy of this opinion is attached to LaTray's brief in support of his petition.  *See*, (Doc. 2-1 at 42-46.)
[4] *See also*, Hrg. Trans. (Doc. 14-7); *see also*, Min. Rpt. (Doc. 14-6.)
[5] *See also*, Or. (Doc. 2-1 at 13-19.)

fifteenth lifetime DUI offense.  *Id*. at 7; *see also*, Sent. Trans. (Doc. 14-10 at  3, 10, 16-17, 20, 23.)[6]  Written judgment was entered on May 15, 2017.  *Id*. at 8.  It does not appear that any challenge was made during the district court proceedings to either LaTray's PFO designation or the fact that the DUI was his third felony DUI.

### ii.    Direct Appeal

On appeal and represented by counsel, LaTray claimed the troopers lacked particularized suspicion for the stop and argued that "[a]n officer cannot create justification to stop a motorist through the officer's own unlawful driving conduct."  *LaTray*, 2018 MT 305N at ₽ 6.[7]  In affirming the district court, the Montana Supreme Court held that the troopers had objective data that LaTray was engaged in wrongdoing when he changed lanes and cut in front of their patrol vehicle which, in turn, required the troopers to brake and maneuver away to avoid a collision.  *Id*. at ₽ 8.  Because LaTray's unsafe lane change violated Montana law, the troopers had particularized suspicion to initiate the traffic stop.  *Id*.  The Court further agreed the fact of the troopers traveling above the speed limit had no bearing on whether LaTray failed to properly execute a lane change in accordance with state law.  *Id*.  The Court held the district court's finding of particularized

---

[6] At issue was a 1995 DUI charge out of Skagit County, Washington, that had an "unknown" disposition.  LaTray was ultimately given the benefit of the doubt and the district court calculated the offense at issue as his fourteenth lifetime DUI.

[7] *See also*, Appellant Br. (Doc. 2-1 at 21-35); *see also*, Reply Br. (Doc. 2-1 at 36-40.)

suspicion was not clearly erroneous and the denial of the motion to suppress was correct as a matter of law. *Id.*

### iii.    Postconviction Proceedings

LaTray filed a petition for postconviction relief in which he alleged the district court lacked statutory authority to sentence him as a PFO, based upon his 1999 and 2009 DUI convictions, and that his sentence was imposed in violation of the *ex post facto* clauses of the United States and Montana constitutions. *See generally*, Pet. (Doc. 14-14.)  The crux of LaTray's argument turned on his contention that Mont. Code Ann. § 61-8-734(1)(b), enacted in 1997, applied prospectively after it took effect. *See*, (Doc. 14-14 at 7.)  According to LaTray's reading of the statute, since his 1999 and 2009 DUI offenses were committed more than five years apart and neither was defined as a felony under either the 1997 or 2007 versions of this statute, they could not be counted as predicate felony offenses for purposes of his PFO designation and sentencing in 2017. *Id.*  LaTray supported his argument with a legislative comment that the 1997 amendment to the statute was to apply to offenses committed on or after October 1, 1997. *Id.* at 15. LaTray also supplemented his petition with reference to a portion of a decision handed down by this Court in *Foster v. Mahoney*, Cause No. CV-08-130-M-JCL. *See*, *Id.* at 16-17.

On January 20, 2020, the district court denied LaTray's postconviction

petition on the merits. *See*, Or. (Doc. 14-15.) As a preliminary matter, the district court determined that LaTray misunderstood the applicable Montana Code provisions when he argued that the pre-2013 versions of the Code would have deemed his 1999 and 2009 DUI convictions as first-time misdemeanors. Instead, the court found the proper question for analysis was: did these two prior DUI convictions constitute "a fourth or subsequent conviction?" *Id*. at 1-2.

In 1995 the Montana Supreme Court amended the statute dealing with prior DUI offenses, to read "[a]n offender is considered to have been previously convicted for the purposes of sentencing if less than 5 years have elapsed between the commission of the present offense and a previous conviction *unless the offense is the offender's fourth or subsequent offense, in which case all previous convictions must be used for sentencing purposes*." *Id*. at 2, citing MCA § 61-8-714(6) (1995)(emphasis in district court's order). The district court concluded that under this amendment, the 1999 DUI considered all of his previous convictions, not just those occurring less than 5 years before his 1999 offense. *Id*. Further, the court held under state law precedent that *ex post facto* concerns were not implicated in this scenario. *Id*. (state citations omitted).

LaTray also argued that the intent of non-retroactivity in Mont. Code Ann. § 61-8-734 means that DUI convictions occurring prior to 1997 could not count towards charging him with a felony. The district court, relying again on Montana

state law, found that such an argument has been rejected and that all previous DUI's occurring before 1997 would be counted as previous DUI convictions for sentencing purposes. *Id.* at 3, citing *State v. Weldele*, 2003 MT 117, ¶ 30, 315 Mont. 452, 69 P. 3d 1162. The district court noted LaTray had been arrested for DUI in 1982, 1986, 1986, 1988, 1988, and 1989.[8] During this time period there was a state law provision that allowed for the expungement of DUI convictions between 1981 and 1989 when the conviction was followed directly by a five-year period in which no additional DUI's were received. *Id.* at 3-4. Given the closeness in the arrest dates, the district court found that LaTray would not have been eligible for expungement under the prior provision. *Id.* at 4. The court then reasoned that these six prior convictions made LaTray's 1999 offense a "fourth or subsequent" felony DUI under MCA 61-8-714(6) (1995).

But the court noted even if it started its examination of LaTray's DUI history in 1991, he still would have accumulated enough DUI's for the 1999 offense to constitute a fourth or subsequent felony offense. LaTray had five DUI arrests between 1991 and 1995. In 1989, the Montana Legislature amended the prior expungement provision, and directed that a prior DUI conviction be classified as

---

[8] Attached to the district court order is a copy of LaTray's criminal history which was contained in his Presentence Investigation outlining DUI arrests and sentences. Sentencing dates are provided for most, but not all of LaTray's DUI convictions. See, (Doc. 14-15 at 6-7.)

confidential criminal justice information if after 5 years the defendant has no

additional DUI convictions. *Id.*, citing *State v. Brander*, 280 Mont. 148, 156, 903

P. 2d 31 (Mont. 1996). Because LaTray had DUI arrests in 1991, 1991, 1993,

1995, and 1995, his convictions would not constitute confidential criminal justice

information. But even if they did constitute confidential justice information, they

could still have been considered at his 1999 sentencing. Or, put another way,

LaTray had enough DUI convictions beginning in 1991, for his 1999 DUI to be

considered a "fourth or subsequent" felony DUI. *Id.* at 4. Because LaTray's 1999

DUI was a felony DUI, his 2009 DUI also constituted a felony DUI. *Id.* at 4-5.

The court found the record conclusively demonstrated LaTray was not entitled to

relief and denied his petition. *Id.* at 5.

### iv.    Postconviction Appeal

On appeal, LaTray argued that the district court erred by arbitrarily applying

statutory law and determining his 1999 and 2009 DUI convictions were felonies

because they were each a "fourth or subsequent conviction" for DUI and that he

was properly designated as a PFO. *LaTray v. State*, 2021 MT 62N at ¶ 5, 403

Mont. 547, 481 P. 3d 845 (Table).[9] Additionally, LaTray argued that applying

state sentencing statutes to consider his prior convictions raised *ex post facto*

---

[9] See also, Appellant's Br. (Doc. 14-17.)

concerns.  Of note, in his appeal, LaTray again cited to this Court's decision in *Foster v. Mahoney*, for the premise that "[a]s of October 1, 1997, MCA § 61-8-714(6)(1995) no longer defined what is to be considered or counted as a prior DUI conviction for purposes of sentencing DUI offenders in Montana."  *See*, (Doc. 2-2 at 23.)

The Montana Supreme Court declined to address LaTray's purely legal arguments because they could have been raised on direct appeal and were precluded from consideration in postconviction proceedings.  *LaTray,* 2021 MT 62N at ⁋ 6, citing Mont. Code Ann. § 46-21-105(2); *Sanders v. State*, 2004 MT 374, ⁋ 14, 325 Mont. 59, 103 P. 3d 1053.  The Court noted that even though the district court denied LaTray's PCR petition on its merits, it "need not retrace the [lower court's] specific rational to uphold its ultimately correct result."  *Id*., citing *State v. Betterman*, 2015 MT 39, ⁋ 11, 378 Mont. 182, 342 P. 3d 971.

LaTray included a claim in an amendment to his appellate brief in which he argued he should have been entitled to the benefit of a 2017 revision to the definition of a PFO contained at § 46-1-202(18), MCA (2017).[10]  But because the argument was not raised in LaTray's PCR petition, the Court declined to address it

---

[10] This provision requires that a defendant be convicted of at least one sexual or violent felony to be eligible for PFO status, but the change in law applies only to offenses committed after June 30, 2017.  See, *LaTray*, 2021 MT 62N at ⁋ 7.  As set forth above, LaTray's offense was committed on March 24, 2015.

on appeal.  *Id.* at ⁋ 7, *citing Griffin v. State*, 2003 MT 267, ⁋ 15, 317 Mont. 457, 77

P. 3d 545.

       **v.**     **State Habeas**

      While his postconviction matter was pending in the district court, LaTray

sought habeas corpus relief from the Montana Supreme Court.  There he argued

again that his 1999 and 2009 DUI convictions should not be counted as prior

felonies or used as grounds to sentence him as a PFO for his 2015 DUI.  *See*

*generally*, (Doc. 14-16.)  LaTray again contended that under the 1997 and 2007

versions of MCA 61-8-734, both his 1999 and 2009 DUI's should have been

treated as misdemeanors and, accordingly, could not be used as predicate offenses

to support a PFO designation.  *Id*. at 7-11.  Thus, LaTray reasoned his PFO

sentence was facially invalid.

      In denying LaTray's petition, the Montana Supreme Court observed that

LaTray failed to raise the infirmity of his prior DUI convictions in the district court

or on direct appeal, accordingly, he exhausted his remedy of appeal and was

precluded from raising issues that should have been raised on appeal.  *LaTray v.*

*McTighe*, OP 19-0631, 2019 WL 6173703, at *1 (Mont. Nov. 19, 2019).  The

Court also found that LaTray had previously exhausted his remedies for

challenging his 1999 and 2009 felony DUI convictions.

      In relation to his 1999 conviction, LaTray only challenged the restitution

order for ambulance and towing services. *Id*., citing, *State v. LaTray*, 2000 MT 262, ¶¶ 7-8, 302 Mont. 11, 11 P. 3d 116.  In 2011, LaTray challenged his 2009 DUI conviction via a habeas corpus petition which was denied as procedurally barred. *Id*., citing, *LaTray v. O'Fallon*, No. OP 11-0247, Or. (Mont. Jul. 26, 2011). The Court held LaTray was time-barred and procedurally barred from challenging his 1999 and 2009 DUI convictions and failed to demonstrate his present incarceration was illegal. *Id*.  The petition was denied and dismissed.

## II.    LaTray's Claims

As set forth above, LaTray claims: (1) the Montana Supreme Court failed to fully and fairly litigate his Fourth Amendment claim that his rights were violated when troopers conducted a warrantless stop of his vehicle, (Doc. 2 at 6-10); (2) the state court's decisions regarding his *ex post facto* claim was contrary to federal law and/or an unreasonable determination of the facts in light of the evidence presented in the state court proceedings; and, (3) the Montana Supreme Court unreasonably denied relief when it failed to apply a 2017 change in state PFO sentencing law to his 2015 conviction for felony DUI.

## III.    Analysis

To be eligible for federal habeas corpus relief, a state prisoner must establish that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000).

11

As explained below, LaTray has failed to establish a federal constitutional violation occurred, accordingly, his petition will be denied.

>    i.    **Claim 1- Fourth Amendment violation**

LaTray maintains that his Fourth Amendment rights were violated during his traffic stop and subsequent seizure and that the state courts failed to fairly litigate the claim.  Respondents maintain that this Court is precluded from adjudicating the claim under the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976).  The Court agrees with Respondents.

The Fourth Amendment of the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  A Fourth Amendment claim is not cognizable in a federal habeas action. *See Stone*, 428 U.S. at 494; *Crater v. Galaza*, 508 F.3d 1261, 1269 (9th Cir. 2007). In *Stone*, the United State Supreme Court held that federal habeas corpus relief is not available for challenges to the admission of evidence obtained by an allegedly unconstitutional search or seizure, so long as "the State has provided opportunity for full and fair litigation of a Fourth Amendment claim." *Stone*, 428 U.S. at 481-482. Pursuant to *Stone*, the only relevant inquiry is whether the petitioner had the opportunity to litigate his Fourth Amendment claim. *Newman v. Wengler*, 790 F.3d 876, 880 (9th Cir. 2015) (per curiam); *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996). If so, federal

habeas corpus relief is unavailable regardless of whether the petitioner did in fact

litigate his claim and regardless of "whether the claim was correctly decided."

*Newman*, 790 F.3d at 880 (citations omitted).

As set forth above, LaTray's Fourth Amendment claim was fully litigated in

the state courts.  His trial counsel sought to suppress evidence and dismiss the DUI

charge based upon a lack of particularized suspicion for the stop.  Following an

evidentiary hearing, the district court denied LaTray's suppression motion.  LaTray

was allowed to enter a no lo contendre plea and preserve the suppression issue for

appeal.  On appeal, LaTray again challenged the stop and seizure and claimed the

troopers violated his Fourth Amendment rights.  The Montana Supreme Court

affirmed the district court's finding of particularized suspicion and found denial of

the suppression motion was legally proper.

If the state has provided the defendant an opportunity for full and fair

litigation of a Fourth Amendment claim, federal habeas relief may not be granted

on the Fourth Amendment issue. *See, e.g., Moorman v. Schriro*, 426 F.3d 1044,

1053 (9th Cir. 2005). Whether the state court correctly decided the Fourth

Amendment claim is irrelevant. *See, Stone*, 428 U.S. at 494; *Newman v. Wengler*,

790 F.3d 876, 880-81 (9th Cir. 2015) ("All *Stone v. Powell* requires is the initial

opportunity for a fair hearing. Such an opportunity for a fair hearing forecloses this

court's inquiry, upon habeas corpus petition, into the trial court's subsequent

course of action, including whether or not the trial court has made express findings of fact." (internal quotations omitted)); *Ortiz-Sandoval,* 81 F.3d at 899 ("The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided.").

While LaTray may disagree with the state courts' decisions relative to his Fourth Amendment claim, he has not established that he was denied an opportunity to litigate the claim. Accordingly, this Court's review is precluded by *Stone*. The claim will be denied.

### ii.   **Claim 2- Ex Post Facto**

LaTray next argues that the state courts unlawfully denied his *ex post facto* claims contrary to federal law in violation of 28 U.S.C. § 2254(d). In their response, Respondents argue LaTray's *ex post facto* claim is procedurally defaulted. (Doc. 14 at 46-49.) Respondents further assert that LaTray failed to demonstrate cause and prejudice to excuse the default. *Id*. at 49-50. Alternatively, Respondents contend LaTray failed to properly present and exhaust this precise claim before the Montana Supreme Court. *Id*. at 50-52. Respondents also argue this claim fails on its merits. *Id*. at 54-59. Finally, Respondents note that in the underlying matters, LaTray cited to this Court's decision in *Foster v. Mahoney*. Respondents believe *Foster* to be inapposite to the present case because LaTray, unlike Foster, has not presented a Fourteenth Amendment due process claim.

14

Respondents ask the Court that if a due process claim is to be construed, they be allowed the opportunity to file a supplemental response. *Id*. at 59-60.

The Court does not construe LaTray's petition to be advancing a due process claim. Further, the Court acknowledges that several procedural bars should prevent resolution of this claim on its merits. Generally, federal courts will not hear defaulted claims unless the petitioner can demonstrate cause for his noncompliance and actual prejudice or establish that a miscarriage of justice would result from the lack of review. *See, Schlup v. Delo*, 513 U.S. 298, 321 (1995); *see also*, *McKinney v. Ryan*, 730 F.3d 903, 913 (9th Cir. 2013). But this Court is empowered to bypass a procedural default issue in the interest of judicial economy when the claim clearly fails on the merits. *See*, *Flournoy v. Small*, 681 F. 3d 1000, 1004 n. 1 (9th Cir. 2012); *see also*, *Franklin v. Johnson*, 290 F. 3d 1223, 1232 (9th Cir. 2001); *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (noting that, in the interest of judicial economy, courts may proceed to the merits, in the face of procedural default issues). Given that LaTray continues to cite to this Court's *Foster* decision, for a premise which it does not stand, it is more efficient to proceed to the merits of the claim and resolve any misunderstanding. The claim lacks merit and will be denied.

The Constitution's Ex Post Facto Clause provides that "[n]o State shall…pass any…ex post facto law." Art. I, § 10, cl. 1; *see also*, Art. I, § 9, cl. 3

("No…ex post facto law shall be passed."); *Calder v. Bull*, 3 U.S. 386, 390

(1798)("[A] law shall not be passed concerning, and after the fact, or thing done, or

action committed.")  The Ex Post Facto Clause "forbids the Congress and the State

to enact any law which imposes a punishment for an act which was not punishable

at the time it was committed; or imposes additional punishment to that then

prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981)(internal quotation marks

omitted).  This prohibition was intended "to assure that legislative Acts g[a]ve fair

warning to their effect and permit individuals to rely on their meaning until

explicitly changed' and to "restrict[ ] governmental power by restraining arbitrary

and potentially vindictive legislation." *Id*. at 28-29.  There are two elements that

"must be present for a criminal or penal law to be ex post facto: it must be

retrospective, that is, it must apply to events occurring before its enactment, and it

must disadvantage the offender affected by it." *Id*. at 29.

LaTray asserts the state courts erred in denying his *ex post facto* claim.

Although he does not provide a clear legal basis to support his claim, the

contention seems to be the DUI laws that took effect in 1997 operated

prospectively and, according to LaTray, application of the statute would have made

his 1999 and 2009 DUI offenses misdemeanors.  LaTray seems to believe that the

1995 Montana Code provisions were inapplicable to him and the state

postconviction court erred in applying the "fourth or subsequent" portion of the

16

1995 statute to his case. *See*, (Doc. 2 at 10.) As set forth above, LaTray has read this Court's decision in *Foster* to lend credence to his position by asserting that *Foster* holds, "[a]s of October 1, 1997, MCA § 61-8-714(6)(1995) no longer defined what is to be considered or counted as a prior DUI conviction for purposes of sentencing DUI offenders in Montana." *See*, (Doc. 2-2 at 23.)[11] Again, LaTray is mistaken in his legal argument and analysis.

In *Foster*, this Court conducted a detailed analysis of the controlling Montana law and its development relative to DUI charges in Montana. *See*, *Foster*, at 5-10. Relative to the 1995 DUI laws and the 1997 revisions, this Court observed:

> Additionally, in 1995, a person convicted of DUI became subject to a felony sentence if he had committed three previous DUIs, three previous [DUI per se offenses], or any combination thereof. 1995 Mont. Laws ch. 447 § 8; Mont. Code Ann. § 61–8–714(4) (1995). Other provisions added to both §§ 714 and 722 stated that "all previous convictions must be used for sentencing purposes," 1995 Mont. Laws ch. 447 § 8, 9, and DUI convictions became countable as [DUI per se] convictions as well, *id.* § 9. Nevertheless, any convictions qualified for expungement under the law in effect when they were entered may not be counted. *E.g., Weldele,* 69 P.3d at 1171 ¶ 31; *Sidmore,* 951 P.2d at 564, 566; *Brander,* 930 P.2d at 35–36.
>
> Finally, in 1997, the Legislature enacted Mont. Code Ann. §§ 61–8– 731 and 734. The felony provisions for fourth or subsequent DUI or [DUI per se] offenses that originally went into effect on October 1, 1995, in §§ 714(4) and 722(7), were relocated to § 731. 1997 Mont.

---

[11] In his reply, LaTray asserts he was citing to *Foster* merely because it demonstrates the "proper usage of an 'applicability clause.'" *See*, (Doc. 20 at 20.)

Laws ch. 525 § 13. Language defining what counts as a prior conviction and stating that "all previous convictions must be used for sentencing purposes" was relocated to § 734. 1997 Mont. Laws ch. 525 § 11. Sections 731 and 734 became effective on May 2, 1997.1997 Mont. Laws ch. 512 § 5. As pertinent here, § § 731 and 734 did not implement a substantive change from 1995 law; they focused instead on setting terms and conditions for felony sentences under §§ 401 and 406. Both §§ 731 and 734 have been amended since their enactment, but not in any respect that is material to Foster's case.

*Foster v. Mahoney*, Or., CV 08-130-M-JCL, at 8-9 (D. Mont. Jan. 3, 2011). Using this framework, it was determined that Foster had three unexpunged convictions for either DUI or DUI per se when he drank and drove on January 15, 2003. Accordingly, he was properly sentenced as a felon. *Id*. at 13-14.

Applying this Court's *Foster* analysis, and as the postconviction court found in LaTray's underlying proceedings, LaTray's 1999 DUI conviction was properly found to be a felony, because the 1999 offense was at least his fourth conviction for DUI. LaTray's contention that the 1997 amendment applied prospectively and, in essence erased all prior lifetime DUI offenses for purposes of determining what constitutes a fourth or subsequent offense, finds no support in the prior decision of this Court or in the legislative history of the laws of Montana.

LaTray does not dispute the accuracy of his criminal history outlining his prior DUI offenses. While this Court agrees with the state district court that LaTray is likely not entitled to expungement of any of his DUI offenses occurring prior to 1989 due to the proximity of commission of the offenses, it matters not.

LaTray has documented DUI convictions stemming from offenses committed after 1989, particularly on: July 25, 1991; December 9, 1991; December 3, 1993; March 19, 1995; and, August 3, 1995.[12]  Thus, based upon the record before this Court, it is clear that at the time LaTray drank and drove on April 25, 1999, he had at least three prior DUI offenses, making the 1999 offense a felony under the pertinent state law outlined above.

Similarly, when LaTray drank and drove on January 31, 2009, this offense was also properly considered to be a felony because it was LaTray's "fourth or subsequent offense" and all previous convictions "must be used for sentencing purposes."  *See*, MCA § 61-8-734(1)(b)(2007).[13]  LaTray's claim that his 1999 and 2009 offenses were misdemeanors lacks merit.

Moreover, as the postconviction court reasonably found, applying the 1995 amendment to LaTray's 1999 offense did not implicate *ex post facto* concerns, because the Montana Legislature was choosing to punish repetitive behavior more severely and not imposing a new penalty for an earlier crime.  (Doc. 14-15 at 2)(citations omitted).  Recidivist statutes which increase punishment for repeat offenders do not violate the prohibition against *ex post facto* laws.  *See*, *Parke v. Raley*, 506 U.S. 20, 27 (1992)("[W]e have repeatedly upheld recidivism statutes

---

[12] *See*, LaTray's criminal history (Doc. 14-15 at 7.)
[13] LaTray attached a copy of this statute to his PCR petition.  *See*, (Doc. 14-14 at 12.)

'against contentions that they violate constitutional strictures dealing with… ex post facto laws."); *United States v. Kaluna*, 192 F. 3d 1188, 1199 (9th Cir. 1999)(holding that "recidivist statues do not violate the Ex Post Facto Clause if they are 'on the books at the time the [present] offense was committed.'").  Here the state DUI laws were amended in 1995, and further refined in 1997.  Under the statutes, LaTray committed his first felony DUI offense in 1999, followed by subsequent felony offenses in 2009 and 2015.  Using the pertinent statutes to enhance LaTray's current sentence did not violate the prohibition against *ex post facto* laws.  Because LaTray cannot establish a federal constitutional violation, the claim must be denied.

### iii.   **Claim 3- PFO Sentence**

LaTray finally argues that the Montana Supreme Court unreasonably denied relief when it failed to apply a 2017 change in PFO sentencing law to his 2015 felony DUI.  *See*, (Doc. 2 at 14.)  As set forth above, the Montana Supreme Court declined to address the claim on postconviction appeal, because LaTray did not present it to the district court.  *See*, *LaTray*, 2021 MT 62N at ⁋ 7. Thus, to the extent LaTray argues that the Montana Supreme Court unreasonably denied his claim under the deferential standard set out in 28 U.S.C. §2254(d), that provision is inapplicable because the Montana Supreme Court did not address the merits of his claim.  *See e.g*., *Price v. Vincent*, 538 U.S. 634, 638 (2003).

Respondents contend the denial of LaTray's claim was reasonable under adequate and independent state law grounds.  Respondents note that the Montana Supreme Court has a longstanding rule that it "do[es] not address arguments raised for the first time on appeal, including in PCR proceedings."  (Doc. 14 at 61)(citing, *LaTray*, 2021 MT 62N at ⁋ 7, citing *Griffin v. State*, 2003 MT 267, ⁋ 15, 317 Mont. 457, 77 P. 3d 544; and,  MCA § 46-21-105(1)(a)("All grounds for relief claimed by a petitioner under 46-21-101 must be raised in the original or amended petition.")).

A habeas petitioner must exhaust his remedies in the state courts before a federal court can grant relief on constitutional claims.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  To do so, the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review.  *Id*. at 845.  When a petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would not refuse to consider because of the state's procedural rules, the claim is deemed to be procedurally defaulted.  *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996).  Procedurally defaulted claims include those that the Montana courts have rejected on an adequate and independent state procedural ground.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

21

To constitute an "adequate" state ground, a procedural bar must be one that is " 'clear, consistently applied, and well-established' at the time of the petitioner's purported default." *Martinez v. Klauser*, 266 F. 3d 1091, 1093-94 (9th Cir. 2001). To constitute an "independent" state procedural bar, the bar must rest on a purely state law ground. A state procedural rule is deemed to be independent if it is not interwoven with federal law or dependent upon a federal constitutional ruling. *Michigan v. Long*, 463 U.S. 1032, 1040 (1983). A state-law ground is interwoven if "the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed." *Ake v. Oklahoma*, 470 U.S. 68, 75 (1983); *see also*, *Park v. California*, 202 F. 3d 1146, 1152 (9th Cir. 2000).

The Montana courts have consistently applied MCA § 46-21-105 and have declined to review issues that were not preserved for appeal in the district court. *See*, *Ellenburg v. Chase*, 2004 MT 66, ⁋ 14, 320 Mont. 315, 87 P. 3d 473; *State v. Schmalz,* 1998 MT 210, ¶¶ 11–13, 290 Mont. 420, 964 P.2d 763; *State v. Spotted Blanket,* 1998 MT 59, ¶ 13, 288 Mont. 126, 955 P.2d 1347. Thus, the procedural rule has been firmly established and regularly followed. It is not interwoven with federal law. The validity of the appellate claim depends on whether or not it was preserved in the lower court proceeding and there is no federal analysis at play. Moreover, the rule was clear at the time that LaTray defaulted the claim by failing

22

to present it to the district court in his postconviction proceedings.

As pointed out by Respondents, the fact that the Montana Supreme Court, at its discretion will exercise plain error review and not apply this procedural bar, does not negate the adequacy of this rule. There is no requirement that for a rule to be regularly followed it must be done so with absolute consistency; it is sufficient if the rule is applied evenhandedly by state courts "in the vast majority of cases." *Dugger v. Adams*, 489 U.S. 401, 410 n. 6 (1989).

Additionally, LaTray acknowledges that he knew of this potential claim and discussed it with his direct appeal attorney, Koan Mercer. *See*, (Doc. 2-2 at 33). Mercer informed LaTray that the 2017 revision to the PFO statue would not apply to his case because the applicability clause prohibited it. *Id*. But even if Mercer advised him not to raise the claim on direct appeal, LaTray provides no basis for failing to present this claim in his postconviction petition.

In short, LaTray has not demonstrated that the state procedural bar at issue was irregularly and inconsistently applied. He failed to present this claim on direct appeal or in his postconviction petition. State law precluded him from raising the claim on appeal from the denial of his postconviction petition. Thus, the claim is procedurally defaulted under an independent and adequate state ground and LaTray has failed to demonstrate a valid basis to overcome the default. The claim will be denied.

## IV.    **Certificate of Appealability**

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), Rules Governing § 2254 Proceedings.  A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).

LaTray has not made a substantial showing that he was deprived of a federal constitutional right.  His first claim is barred by the doctrine of *Stone v. Powell*, his second claim lacks merit, and his third claim is procedurally defaulted without excuse.  Accordingly, there are no close questions and there is no reason to encourage further proceedings in this Court.  A certificate of appealability is denied.

Based on the foregoing, the Court enters the following:

### ORDER

1.  LaTray's Petition (Doc. 1) is DENIED and dismissed with prejudice.

2.  The Clerk of Court is directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3.  A certificate of appealability is DENIED.

DATED this 13th day of June, 2022.

/s/ Kathleen L. DeSoto
Kathleen L. DeSoto
United States Magistrate Judge